Albert Lopez GALLEGO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16530.

United States Court of Appeals
Ninth Circuit.

March 23, 1960.

E. M. Heppenstall, Denver, Colo. (Samuel C. Jackson, Topeka, Kan., on brief), for appellant.

Wilbur G. Leonard, U. S. Atty., Council Grove, Kan., on brief for appellee.

Before PICKETT and BREITENSTEIN, Circuit Judges, and SAVAGE, District Judge.

Clague A. VanSlyke, Tucson, Ariz., for appellant.

Jack D. H. Hays, U. S. Atty., Mary Anne Reimann, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before MATHEWS, HAMLEY, and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

Albert Lopez Gallego appeals from his conviction and sentence on a charge of unlawful importation of marijuana, in violation of 21 U.S.C.A. § 176a. Two questions are presented here. The first is whether, because of an asserted missing link in the chain of evidence relating to the custody of a can and a sack containing marijuana, it was error to admit these articles into evidence as exhibits. The second is whether the sentence imposed in conformity with 21 U.S. C.A. § 176a and 26 U.S.C.A. § 7237(d) constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.

Concerning the question as to the admissibility of evidence, the relevant facts are as follows: Appellant entered the United States from Mexico on April 3, 1959, and was stopped at the border by

an immigration inspector and a customs inspector. In the trunk of appellant's car the immigration inspector found a paper sack which contained a substance which appeared to be marijuana. He handed the sack to the customs inspector who, in turn, gave it to Fred Valenzuela, Deputy Collector of Customs, at the latter's nearby home. Valenzuela then took the sack to his office in the Customs House at Naco and put it in his desk.

Immediately afterwards he searched appellant at the Customs House and found upon the latter's person a Prince Albert tobacco can containing what appeared to be marijuana cigarettes. As soon as the can was found it was placed in Valenzuela's desk.

The sack and can were kept in the desk for approximately one hour, during which Valenzuela was at all times in the vicinity of the desk. That night Valenzuela placed the sack and can in a safe in the Customs House. The next day he personally took these two articles to the Commissioner's hearing, after which he returned them to the safe. Valenzuela took the can and sack from the safe about ten days later and sent them by registered mail to the customs laboratory in Los Angeles. They were returned by registered mail and replaced in the safe, where they remained until the morning of the trial.

At the trial the immigration inspector who had found the paper sack in the trunk of appellant's car examined a paper sack which was handed to him, and its contents, and identified the sack as that which he had found. His initials appeared thereon. He similarly examined a can which was handed to him, on which his initials appeared, and identified the can as the one which had been taken from appellant's person. He testified that the contents of the can appeared to be the same as when the can was first found, but was unable to testify that the contents actually were the same.

Valenzuela similarly examined the same paper sack and can which were produced at the trial. He identified the sack as the one which had been turned over to him at his home. He identified the can as the one which he had found on appellant's person and testified that its contents appeared to be "very much" the same as when the can was discovered. A customs inspector who had been present when the automobile was searched examined the paper sack which was produced at the trial, and its contents, and identified the sack as the article found in the trunk of appellant's car.

A chemist for the United States Customs Service identified these two containers as the ones which had reached him by registered mail. On the basis of his analysis of their contents he testified that the sack and can each contained marijuana.

The safe at the customs office in Naco, where the sack and can were placed for a period of time, had a combination lock. The combination was known only by Valenzuela and by the acting deputy collector of customs who takes Valenzuela's place when the latter is away. The acting deputy collector was not called as a witness.

After all of the evidence reviewed above had been received the government offered the paper sack and its contents in evidence as exhibit 1–A, and the can and its contents as exhibit 1–B. Appellant objected on the ground that the government had failed to show that it had exclusive control and possession of the articles during the ten days they were in the safe before being sent to the Los Angeles laboratory. The objection was overruled and the articles were admitted in evidence.

It is this objection which appellant renews here in contending that it was error to receive exhibits 1–A and 1–B in evidence. Specifically, appellant argues that the "chain of custody" must be complete and exclusive and that it was incumbent upon the government to prove that the articles could not have been tampered with during this ten-day period. In permitting introduction of the exhibits, appellant contends, the court drew the impermissible conclusion that the acting deputy collector, who knew the

combination of the safe but was not called as a witness, did not change or tamper with the evidence.

■■ Before a physical object connected with the commission of a crime may properly be admitted in evidence there must be a showing that such object is in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge. Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence. United States v. S. B. Penick & Co., 2 Cir., 136 F.2d 413, 415.

The jury, of course, is free to disregard such evidence upon its finding that the article was not properly identified, or that there has been a change in its nature.

■ The trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion. No abuse of discretion was shown here.

■ The only other person who knew the combination of the safe was the acting deputy collector of customs. In the absence of any evidence to the contrary, the trial judge was entitled to assume that this official would not tamper with the sack and can or their contents. Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties. Pasadena Research Laboratories v. United States, 9 Cir., 169 F.2d 375, 381–382.

■ There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence. Pasadena Research Laboratories v. United States, supra.[1]

Accordingly, the failure of the government to produce the acting deputy collector of customs as a witness did not require the trial court to reject exhibits 1–A and 1–B.

The trial court did not err in admitting these exhibits in evidence.

Appellant's attack upon the sentence as constituting cruel and unusual punishment within the meaning of the Eighth Amendment relates to the statutory restrictions which were placed upon the court in imposing the sentence.

Title 21 U.S.C.A. § 176a provides that for the crime of which appellant was convicted the penalty for a first offense shall be imprisonment for not less than five years nor more than twenty years, and in addition a fine of not more than $20,000. Appellant was given the minimum penalty prescribed by this statute: a five-year prison term and no fine.

Appellant asserts, however, that were it not for 26 U.S.C.A. § 7237(d) the trial court might have suspended sentence or granted probation. Likewise, it is argued, were it not for that statute appellant might have become eligible for parole after serving one third of his term, as provided in 18 U.S.C.A. § 4202.[2] It

1. This is also true in civil cases. See Rosedale Coal Co. v. Director of U. S. Bureau of Mines, 4 Cir., 247 F.2d 299, 303.

2. Title 26 U.S.C.A. § 7237(d) reads as follows:
"No suspension of sentence; no probation; etc.—Upon conviction—

"(1) of any offense the penalty for which is provided in subsection (b) of this section, subsections (c), (h), or (i) of section 2 of the Narcotic Drugs Import and Export Act, as amended, or such Act of July 11, 1941, as amended, or

"(2) of any offense the penalty for which is provided in subsection (a) of

**918**

is contended in effect that under the particular facts of this case the sentence constitutes cruel and unusual punishment because, consistent with section 7237(d), his sentence could not be suspended, he could not be placed on probation, and he may not be paroled.[3]

■ Appellate courts have no control over a sentence which is within statutory limits. Flores v. United States, 9 Cir., 238 F.2d 758. If, however, the sentence prescribed by statute is cruel and unusual within the meaning of the Eighth Amendment, the statute itself is unconstitutional and any sentence imposed thereunder must be set aside. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793.

The purpose Congress sought to achieve in enacting section 7237(d) is succinctly stated in the report of House Committee on Ways and Means on H.R. 11619, which became the Narcotic Control Act of 1956.[4] This purpose does not exhibit an inclination to visit upon offenders such as appellant a penalty so out of proportion to the crime committed that it shocks a balanced sense of justice. At worst it merely forbids in this kind of case and for good reason the discretionary granting of special benefits which Congress did not have to permit in the first place.

■ We agree with the view expressed in State v. Thomas, 224 La. 431, 69 So.2d 738, 740, in dealing with the validity of a similar state statute under a similar state constitutional provision:

"In view of the moral degeneration inherent in all aspects of the crime denounced by the Narcotic Act, it cannot be said that the length or severity of the punishment here prescribed is disproportionate to the offense." [5]

■ Appellant further contends that however valid the sentence or statute may be under other facts, they contravene the Eighth Amendment as applied in this case. We find no circumstances here which warrant such a conclusion.

Affirmed.

---

this section, if it is the offender's second or subsequent offense,

"the imposition or execution of sentence shall not be suspended, probation shall not be granted, section 4202 of title 18 of the United States Code shall not apply, and the Act of July 15, 1932 (47 Stat. 696; D.C.Code 24–201 and following), as amended, shall not apply."

3. Appellant also contended in his brief that section 7237(d) prevents him from receiving good time allowance. At the oral argument, however, his attorney conceded that this statute does not deprive him of this allowance. Good time allowance provided for under 18 U.S.C.A. § 4161 is not affected by section 7237(d).

4. 2 U.S.Code Congressional and Administrative News, 84th Cong., 2d Sess., 1956, p. 3274 at pages 3284–3285, reading in part as follows:

"The need for the elimination of probation, suspension of sentence, and parole with respect to the first-offender-trafficker is demonstated by the appearance of increasing numbers of recruits with a record of no previous narcotic offenses in the illicit trafficking because of the severe penalties imposed on repeating offenders. As a result of the fact that repeating offenders are subject to a heavier mandatory penalty under the Boggs' law, persons having a previous narcotic or marihuana law violation conviction have moved into the background and recruited young hoodlums as peddlers. At the present time, 80 per cent of the violators apprehended and convicted are first offenders under the narcotic and marihuana laws. The majority of these individuals have prior records of crime. However, because they have no prior conviction for violations under the Boggs law, they are considered as first offenders. With the possibility of receiving probation or a suspended sentence, these unscrupulous individuals are willing to risk apprehension for the profits derived from this type of crime. Therefore, it is the view of your committee that the first-offender-peddler problem will become progressively worse and eventually lead to the large scale recruiting of our youth by the upper echelon of traffickers unless immediate action is taken to prohibit parole, probation, or suspension of sentence in the case of all persons convicted of trafficking in narcotic and marihuana drugs."

5. See, also, State v. Bellam, 225 La. 445, 73 So.2d 311.