**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Troy Anthony EDWARDS,
Defendant–Appellant.**

No. 99–30143.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 2000.

Filed Sept. 7, 2000.

---

**12.** *Montero–Camargo,* 208 F.3d at 1135–36.

**13.** *Id.* at 1131.

**14.** 206 F.3d 882 (9th Cir.2000) (en banc).

**1142**

Peter J. Avenia & Robert H. Gombier, Tacoma, Washington, for the defendant-appellant.

Timothy J. Ohms, Special Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Before: PREGERSON and D.W. NELSON, Circuit Judges, and KARLTON, District Judge.[1]

PER CURIAM:

Troy Anthony Edwards appeals his conviction from his second trial on one count of possession of cocaine with intent to distribute. Because we find that the actions of the government denied Edwards the right to a fair trial, we reverse.

The prosecution of Edwards has been troubled from the beginning. At the first trial, the government allegedly found a bail receipt linking Edwards to the black bag that contained the cocaine after tampering with the bag, which had been introduced as evidence, outside of the courtroom in violation of Local Rule CR 79(g). At the second trial, the government called a key witness despite repeatedly telling Edwards's attorney and the district court that the witness had refused to testify, and, in any case, could not be found.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

In January 1995, the Tacoma Police responded to the scene of a domestic dispute.

1. Honorable Lawrence K. Karlton, United States District Judge for the Eastern District of California, sitting by designation.

The victim, Carbeania Grimes, was bleeding from her forehead and was very upset. She told the officers that her boyfriend, Edwards, had struck her in the head with a gun. Grimes apparently also told the officers that Edwards had left the house with the gun and a black nylon bag. Four officers interviewed Grimes; one of the officers made a tape recording of his interview.

An officer at the scene observed Edwards drive a gray BMW out of an alley that ran next to Edwards's house and back the car into a parking space. Edwards was arrested on the suspicion of assault. Based on the interviews with Grimes, the police impounded the BMW, which was not registered to Edwards. The officers then obtained a warrant to search the car for the gun. Inside the trunk, they found clothes, paperwork, and a black nylon bag. The police opened the bag, which contained no indicia of ownership, and saw baggies of what appeared to be crack cocaine. They closed the bag and then obtained a second search warrant to search it. The search revealed eight baggies of crack cocaine and nearly seven kilograms of cocaine. In the front seat of the car, the police found a folder of legal papers belonging to Edwards, two cellular phones, and material used to package the cocaine. They also found various shopping bags with receipts containing Edwards's name. They never found the gun.

Edwards was charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A). He initially pleaded guilty, but later moved to withdraw his plea. The district court denied his motion to withdraw the guilty plea, and sentenced Edwards to 240 months in prison. In 1997, the Ninth Circuit vacated Edwards's guilty plea and remanded the case to the district court for trial. *See United States v. Edwards*, No. CR–95–05021–1–JET, 1997 WL 8579 (9th Cir.1997) (unpublished opinion).

## A. First Trial

At Edwards's first trial on May 5 and 6, 1997, the defense argued that the government had insufficient proof that the black nylon bag containing cocaine belonged to Edwards. During pretrial proceedings, the district court excluded as inadmissible hearsay the statements made by Grimes in her interviews with the police. Because Grimes refused to testify at the first trial, her hearsay statements to the police were the government's only evidence linking Edwards to the black nylon bag found in the trunk of the car.[2]

The government introduced the black nylon bag into evidence on the first day of the trial. Neither the bag nor its contents contained any fingerprints. A police officer who had searched the car testified that there was nothing in the black nylon bag that established the identity of its owner. At the end of the first day of trial, the prosecutor, Bruce Miyake, instructed another officer to take the black nylon bag out of the courtroom and into the U.S. Attorney's office. This conduct violated Local Rule CR 79(g), which states that "[a]fter being marked for identification, all exhibits, except weapons or other sensitive material, shall be placed in the custody of the clerk during the duration of the trial, unless otherwise ordered by the court."

At the U.S. Attorney's office, Miyake examined the empty bag in the presence of two officers. In examining the bag, Miyake removed a cardboard stiffener in the bottom of the bag. Beneath the cardboard stiffener, Miyake allegedly discovered a wadded up piece of paper. The paper was a bail receipt from the Tacoma Municipal Court with Edwards's name on it. The bag had been in the possession of the Tacoma Police for two years, but the receipt was not discovered until the first day of trial. *See Edwards*, 154 F.3d at 919. That evening, Miyake called Edwards's

---

**2.** The district court subsequently admitted Grimes's hearsay statements in the first trial, ruling that the defense had "opened the door," on cross examination. *United States v. Edwards*, 154 F.3d 915, 918 (9th Cir.1998).

counsel and informed him that the government would be introducing the bail receipt.

The next day, Edwards's counsel moved to exclude the bail receipt and asked for a mistrial. Defense counsel claimed that his case had been unfairly prejudiced by the alleged discovery of the receipt because the defense theory depended entirely on the contention that there was no evidence linking Edwards to the black nylon bag. Counsel also argued that the prosecutor was injecting himself into the case as the government's chief witness. The district court denied the motion. A police officer then testified about the bail receipt, acting as if he were discovering it for the first time in the courtroom. On cross-examination, the officer admitted that the prosecutor had found the bail receipt the night before. On re-direct, when the officer was again asked about how the bail receipt had been discovered, he insisted that no one had tampered with the black bag.

The prosecutor did not testify. Neither did Grimes. The prosecutor told the court that Grimes was living in Las Vegas, had been subpoenaed, but was reluctant to testify. The court denied a continuance that would have allowed the government to secure Grimes's testimony. The police conceded on cross-examination that they failed to inventory the legal documents contained in the manila folder found in the front seat of the BMW. The failure to inventory those documents raised additional questions about the origins of the bail receipt purportedly discovered in the bottom of the black bag. During closing argument, the prosecutor denied that the black nylon bag had been tampered with and argued that the bail receipt was "the closest thing to a smoking gun that ties the defendant to the bag." *Id.* at 64. The jury convicted Edwards, and the trial judge sentenced him to 262 months in prison.

On June 23, 1998, the Ninth Circuit reversed Edwards's conviction, finding that "the prosecutor's continued perfor-

mance of his role as prosecutor in this case violated the principles upon which both the rule against prosecutorial vouching and the advocate-witness rule are based." *Edwards,* 154 F.3d at 921. Because the court declined to address the other issues raised, it did not rule on Edwards's argument that the bail receipt should have been suppressed. *See id.* at 924 n. 3.[3]

### B. *Second Trial*

A new judge presided over the second trial. The case was re-assigned to an out-of-district prosecutor, Timothy Ohms. Edwards renewed his motion to suppress the bail receipt. At a pre-trial conference on January 8, 1999, Edwards's attorney argued that the bail receipt should be excluded because: (1) the evidence had been illegally obtained in direct violation of Local Rule CR 79(g); (2) it was inherently unreliable; and (3) suppression was an appropriate sanction for government misconduct in the first trial. The district court denied the motion and instructed both parties to prepare a list of witnesses they intended to call. The government left Grimes's name off the witness list and repeatedly informed both the judge and defense that she would not be testifying.

The defense attorney's opening statement at the retrial focused on the bail receipt:

> The government wants you to think that this case is about a big bag of dope, but what this case is really about is a little piece of paper. A little piece of paper like this crumpled up. A little piece of paper with Troy Edwards' name on it that was planted in that big bag of dope by the government to fake the evidence that the government didn't have. A little crumpled up piece of paper that says you must acquit Troy Edwards.

The defense explained that the prosecutor at the last trial described the bail receipt as "the smoking gun," and that

---

**3.** The case was reassigned the case to another district judge. *See United States v. Edwards,*

152 F.3d 930, 1998 WL 385413 (9th Cir.1998) (unpublished order).

absent this tainted evidence the government had no way of determining that the bag belonged to Edwards. Edwards's defense focused on discrediting the government's witnesses who handled the black nylon bag and who allegedly found the bail receipt. The former prosecutor, Miyake, testified that none of the documents from Edwards's car had been inventoried. Miyake admitted that, during the first trial, he had told one of the officers to remove the black nylon bag from the courtroom after it had been admitted into evidence and bring it back to the U.S. Attorney's Office. Miyake also recounted how he allegedly discovered the bail receipt by removing the bag's cardboard stiffener.

Before the second day of the retrial, the government announced that Grimes would testify. The court denied Edwards's motion to exclude Grimes's testimony or to declare a mistrial. During his direct examination of Grimes, the prosecutor asked numerous questions about the black bag:

Q: Ma'am, did you in fact see the defendant with a black bag as he left the residence.

A: I seen him with something.

Q: Did it look like a black bag, ma'am?

A: Yes, it was a dark colored bag.

Grimes could not remember what she told police officers about the bag on the night of the incident:

Q: Do you remember telling them you saw the defendant leave with a black bag?

A: No, I don't remember telling them that, but if that's what I told them—

Q: Do you remember looking at photographs at that time of the black bag?

A: No, I don't remember.

Although Grimes acknowledged that either she or Edwards had purchased the bag in question, she would not testify that she saw Edwards carrying a black bag that night.

On cross-examination, Grimes admitted that she was drunk, that she had been crying, and that she had a difficult time seeing that night. She also attempted to clarify her testimony on direct examination:

Q: It's also true, isn't it, that you saw Troy leave the house, but you didn't see exactly what he was carrying isn't that correct?

A: No, I didn't see exactly what he was carrying.

Q: In fact, you weren't sure about the what color any bag he might have been carrying was, isn't that correct?

A: No, I just know it was a dark bag. I didn't know the exact description of the bag.

Q: And you had a number of pieces of luggage, did you not?

A: We had three sets.

Grimes's inability to identify the bag on cross-examination is corroborated by what she told police at the scene. In a transcript of Grimes's taped interview with one of the police officers, Grimes told the officer, "so I knew he took a bag and the officer asked me what color it was, and I told him I didn't know, I knew it was a bag, because it was over his shoulder...."

In its closing argument, the government argued that Grimes's testimony was the new "smoking gun" that obliterated the defense's theory of the case:

The receipt is a moot point at this point in time. It's nice. It's corroborative. It's helpful to have. But what was that receipt. That receipt was circumstantial evidence, basically, of the ownership of this bag. It was circumstantial evidence of what Ms. Grimes has now confirmed to you with direct testimony based upon her personal knowledge.

It wasn't a comfortable thing to do. You could see her looking at this and saying, "Yeah, I do recognize that." Whatever the receipt was in the last trial, the receipt is not the smoking gun in this trial. The smoking gun is Ms. Grimes saying, "I recognize that bag."

The following day, the jury convicted Edwards. On March 12, 1999, the district court heard oral argument and denied Edwards's renewed motion for a new trial.

On April 23, 1999, Edwards was sentenced to 240 months in prison. Edwards timely appeals.

## II. SUPPRESSION OF THE BAIL RECEIPT

Edwards argues that the bail receipt should have been excluded at the second trial because at the first trial the government had removed the black bag from the courtroom in violation of the local rule and tampered with it.

■■■ We review the district court's decision to admit or exclude evidence for an abuse of discretion. *See United States v. Leon–Reyes,* 177 F.3d 816, 819 (9th Cir. 1999). Such decisions will be reversed for an abuse of discretion only if such nonconstitutional error more likely than not affected the verdict. *See United States v. Ramirez,* 176 F.3d 1179, 1182 (9th Cir. 1999) (citations omitted).

■■ "The authentication of evidence is 'satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Harrington,* 923 F.2d 1371, 1374 (9th Cir.1991) (quoting Fed.R.Evid. 901(a)). The burden is on the government to "introduce sufficient proof so that a reasonable juror could find that [the evidence is] in 'substantially the same condition' as when [it] was seized." *Id.* (quoting *Gallego v. United States,* 276 F.2d 914, 917 (9th Cir.1960)).

■■■ Whether the district court abused its discretion in admitting the bail receipt in evidence hinges on the whether there was "evidence of tampering." *Harrington,* 923 F.2d at 1374. "The district court may admit the evidence if there is a 'reasonable probability the article has not been changed in important respects.' Further, in the absence of any evidence of tampering, a presumption exists that public officers 'properly discharge[ ] their official duties.'" *Id.* (quoting *Gallego,* 276 F.2d at 917). "Merely raising the possibility of tampering is not sufficient to render evidence inadmissible." *Id.* (citation omitted).

■■ In *United States v. Dickerson,* 873 F.2d 1181, 1185 (9th Cir.1988), we addressed the subject of evidence tampering:

Tangible evidence of crime is admissible only when shown to be in substantially the same condition as when the crime was committed. An important factor to be considered is the likelihood of intermeddlers tampering with the evidence. If there is some evidence of tampering, then the government must show that acceptable precautions were taken to maintain the evidence in its original state.

*Id.* at 1185 (citations omitted). In *Dickerson,* the government instituted forfeiture proceedings against a private plane that it believed was used for drug trafficking. We reversed the forfeiture order because there was "evidence of tampering with the contents of the plane." *Id.* at 1184. The initial search and seizure of the plane revealed no traces of drugs. Six days later, however, a DEA-trained dog named Brutus discovered a narcotic substance on the plane's carpet. We found evidence of tampering with the carpet: "When initially seized, the cargo space's carpet was rolled or bunched up in the back of the plane. When the Customs agent arrived with Brutus six days later to search the plane, the carpet had been laid flat on the floor of the airplane." *Id.* In *Dickerson,* we faulted the government for not securing the plane during those six days. *See id.* at 1185.

■■ Edwards argues there is evidence of tampering in this case akin to the facts in *Dickerson.* During the first trial, the government violated a local rule in removing the black nylon bag from the courtroom after it had been admitted into evidence. This rule is designed to protect the integrity of the evidence. After the prosecutor improperly removed the bag, he disassembled it. With two of the officers present, the prosecutor opened and closed zippers and removed the cardboard stiffener from the bottom of the bag. The prosecutor reassembled the bag and held it

overnight rather than immediately returning the bag to the court clerk.

The government argues that *Dickerson* is distinguishable, because in that case the customs agents admitted that they did not know who had been in the plane during the intervening six-day period. *See Dickerson*, 873 F.2d at 1184–85.

The fact that the prosecutor tampered with a crucial piece of evidence in this case undermines the integrity of the verdict. The government's initial search of the black nylon bag did not reveal the bag's owner. The government had custody of the bag for over two years without discovering the bail receipt. At the first trial, moreover, the government did not have the benefit of Grimes's testimony or her statements to the officers, which the court initially excluded as hearsay. Thus, after the first day of the first trial, the government had no means of linking Edwards to the bag until the bail receipt was allegedly discovered by the prosecutor, who violated a local procedural rule by taking the bag back to his office and disassembling it after it had been introduced into evidence.

In addition to violating the local rule by taking the bag from the courtroom, the government failed to take other necessary precautions. The police did not conduct a thorough initial search of the black nylon bag and never inventoried numerous papers belonging to Edwards that were seized from the inside of the car. The government's failure to keep an accurate record of these papers heightens the suspicion that the bail receipt could have come from somewhere other than the black bag.

In light of the foregoing, we conclude that the bail receipt should have been excluded at the second trial.

■ Our conclusion that the bail receipt should have been suppressed does not end our inquiry. We also must address the harmless error standard. We are guided by the rule that evidentiary decisions will be reversed for an abuse of discretion only if such nonconstitutional error more likely than not affected the verdict. *See Ramirez*, 176 F.3d at 1182 (citations omitted).

■ We hold that the admission of the bail receipt was not harmless error because Grimes's equivocal testimony, standing alone, is insufficient to support a conviction beyond a reasonable doubt. Grimes never linked Edwards to the black nylon bag containing cocaine, nor could she identify the bag she saw Edwards carrying when he left the house, other than to provide a vague description that it was a "dark colored bag." Furthermore, Grimes admitted that she was drunk that night, couldn't see that well, and that she and Edwards owned three different sets of luggage.

During closing argument, the government conceded that the bail receipt "corroborated" Grimes's testimony. But the bail receipt did more than that—it provided a degree of certainty regarding ownership of the bag that Grimes's testimony could not supply. Because the bail receipt more likely than not affected the outcome of the trial, we hold that its admission was not harmless error.

## III. CONCLUSION

We reverse and remand for further proceedings not inconsistent with the views expressed in this opinion.

**REVERSED AND REMANDED.**