**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

GARY BERNARD MOORE,

        Plaintiff - Appellant,

  v.

RICHMOND POLICE DEPARTMENT;
et al.,

        Defendants,

  and

S. ZEPPA; et al.,

        Defendants - Appellees.,

  and

KELLY HARRINGTON, Warden,

        Respondent.

No. 10-16082

D.C. No. 3:04-cv-01749-MMC

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, Senior District Judge, Presiding

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted September 10, 2012
San Francisco, California

Before: ALARCÓN, THOMAS, and BERZON, Circuit Judges.

Gary Moore appeals from the district court's judgment following a jury verdict in favor of defendants in his 42 U.S.C. § 1983 action, and from the district court's denial of his motion for a new trial. Moore alleged that officers of the City of Richmond Police Department used excessive force when they arrested him on October 16, 2002. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts and procedural background, we will not recount them here except as may be required in discussing a particular appellate issue.

I

The district court ruled that evidence of Moore's prior 1998 conviction for attempted grand theft person was admissible for impeachment purposes under Fed. R. Evid. 609. We review evidentiary rulings for abuse of discretion. *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004). An erroneous decision to admit evidence will be reversed only if the error was prejudicial. *Simpson v. Thomas*, 528 F.3d 685, 689 (9th Cir. 2008); *Powell v. Levit*, 640 F.2d 239, 241 (9th Cir. 1981). This court will find prejudice when it is persuaded that the admission

2

affected the outcome of the trial.  *United States v. Edwards*, 235 F.3d 1173, 1178

(9th Cir. 2000).

Moore correctly argues on appeal that his 1998 conviction for attempted

grand theft person was not properly admitted under either Rule 609(a) or 609(b),

because the conviction was more than ten years old and the district court did not

articulate any specific facts or circumstances demonstrating that the probative

value of the conviction substantially outweighed its prejudicial effect, as required

under Rule 609(b).  The district court's error in admitting the 1998 conviction was

harmless, however, because Moore has not met his burden of persuading this court

that the admission affected the outcome of the trial.  *See Edwards*, 235 F.3d at

1178 (holding that an erroneous admission of evidence is not harmless where it

"more likely than not affected the outcome of the trial").

Jurors heard evidence of Moore's more recent, more serious 2005 felony

conviction for residential burglary, which likely did more to impeach his

credibility than the older 1998 conviction for attempted grand theft person.  Thus,

it is not likely that the admission of the evidence of the 1998 conviction materially

affected the jury's deliberations.

## II

Moore argues that the jury instructions misstated what he was required to

prove at trial and that, under "the law of the case" doctrine, it was error for the district court not to include in the jury instructions the statements made in an earlier summary judgment order in the case. A district court's decision whether to apply "law of the case" doctrine is reviewed for an abuse of discretion. *See S. Or. Barter Fair v. Jackson Cnty., Oregon*, 372 F.3d 1128, 1136 (9th Cir. 2004). In reviewing jury instructions, we must determine "whether, considering the charge as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988). The district court's jury instructions met this standard.

The district court did not abuse its discretion in determining that statements from an earlier summary judgment ruling by a prior judge are not required to be incorporated in the jury instructions. *See Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (citing *Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79-80 (9th Cir. 1979) ("the law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment")).

Moore also contends that three of the jury instructions were unnecessary, superfluous, confusing and/or contradictory. He largely concedes, however, that those instructions accurately stated the law.

"[J]ury instructions must fairly and adequately cover the issues presented,

4

must correctly state the law, and must not be misleading." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (internal quotations omitted). "So long as [jury] instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion." *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985).

The jury instructions, viewed as a whole, were not misleading. The district court did not err in instructing the jury that it was required to find whether the officers engaged in any of the actions described in the instruction, and if so, whether those actions were performed with excessive force.[1]

_____

[1]In reaching a contrary result, the dissent concludes that the jury instruction setting forth the substantive law on excessive force was legally erroneous and reversible error because the jury "most likely" understood the instruction to mean that "*even if* the jury determined that the Defendant officer(s) had [for example] . . . '[i]nserted a flashlight into Mr. Moore's rectum at the hospital' . . .—the jury could still find that the force was justified by the circumstantial factors . . . including the severity of the crime for which Moore was arrested or the fact that he was 'uncooperative and restive at the hospital.'" But "the law governing appellate review of jury instructions counsels against looking at any one jury instruction in isolation." *Swinton v. Potomac Corp.*, 270 F.3d 794, 807 (9th Cir. 2001). "Rather, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Id.* (quotations and citations omitted). Taken as a whole, the instructions given by the district court "fairly and correctly" cover the proper legal standard governing excessive force.

We also disagree with the dissent's determination as to how the jury "most likely" understood the challenged instruction. It is equally likely, based on the evidence presented at trial, that the jury determined that the defendants did not use

(continued...)

5

III

Moore contends that the district court abused its discretion in denying his motion for a new trial because (1) the withdrawal of his counsel two weeks prior to commencement of trial caused him irreparable harm and (2) he was improperly questioned about prior bad acts during cross-examination. We review the district court's denial of a motion for new trial pursuant to Fed. R. Civ. P. 59(a) for abuse of discretion. *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003). "The abuse of discretion standard requires us to uphold a district court determination that falls within a broad range of permissible conclusions, provided the district court did not apply the law erroneously." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (citing *Grant v. City of Long Beach*, 315 F.3d 1081, 1091 (9th Cir. 2002)). This court "first look[s] to whether the trial court identified and applied the correct legal rule to the relief requested [and then] . . . look[s] to whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the

_____

[1](...continued)
excessive force or take any of the actions listed in the first part of the challenged jury instruction, in which case the jury would not have proceeded to the second part of the jury instruction to apply the factors used to determine whether the force was excessive.

6

facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009); *see also Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (internal citations omitted) (holding that a new trial may be granted if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice").

In determining whether an irreconcilable conflict exists to support the grant of a motion to withdraw as counsel, we consider "(1) the adequacy of the district court's inquiry; (2) the extent of any conflict; and (3) the timeliness of the motion." *United States v. McKenna*, 327 F.3d 830, 843 (9th Cir. 2003) (citing *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001). Here, the district court adequately inquired into the extent of the attorney-client conflict and considered the timeliness of the motion. In granting counsel's motion to withdraw, the district court found that Moore had "engaged in conduct that 'render[ed] it unreasonably difficult for [counsel] to carry out the employment effectively," and cited to Rule 3-700(C) of the California Rules of Professional Conduct, which states that if the client's conduct renders it unreasonably difficult for the lawyer to carry out their employment effectively, they are not required to stay in the case.

Moore also argues that the district court abused its discretion in denying his

7

motion for a new trial because he was prejudiced when the officers questioned him about an occasion several years earlier when he was stopped by police in San Pablo and lied about his true identity. Moore objected to this line of questioning at trial. The district court permitted defense counsel, over Moore's objection, to continue cross-examining him about the incident but limited the questioning to reading certain questions and answers Moore provided in his prior deposition testimony concerning the incident.

Under Fed. R. Evid. 608(b)(1), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Moore has failed to demonstrate that the district court abused its discretion in allowing defendants to impeach him by evidence of his prior testimony that he had in the past lied to police when they stopped him and asked for his name, or that he was prejudiced by the ruling.

**AFFIRMED.**



*Moore v S. Zeppa et al 10-16082*

**Judge Berzon, dissenting in part:**

I concur in the proposed memorandum disposition except with regard to the most important jury instruction, the one concerning whether the police used excessive force against Moore.

"[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (quoting *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005)) (internal quotation marks omitted). Because the excessive force instruction as likely understood by the jury was legally erroneous, I would reverse the verdict.[1]

Here is the instruction that was given:

---

[1] Although Defendants argue that Moore did not adequately object to the jury instructions in district court to preserve the issue for appeal, the majority reaches the merits of the claimed instructional error, so I do as well. Moreover, Moore did object to instructions that would permit the jury to find Defendants had committed the actions listed in the final excessive force instruction but nevertheless conclude there was no violation of Moore's constitutional rights. Even if Moore's objections were deficient in terms of the plain language of Federal Rule of Civil Procedure 51, a formal objection is not required "[w]here the district court [was] aware of the party's concerns with an instruction, and further objection would [have been] unavailing." *Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 714–15 (9th Cir. 2001) (internal quotation mark omitted).

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and/or in defending himself or others and/or in interacting with arrested subjects. Thus, in order to prove an unreasonable seizure in this case, Mr. Moore must prove by a preponderance of the evidence that the Defendant officer(s) used excessive force when they took any of the following actions:

1)      Used force and inflicted injuries upon Mr. Moore once he was in handcuffs at the scene;
2)      Forcibly and unreasonable restrained Mr. Moore while a nurse took his temperature rectally, against Mr. Moore's wishes, at the hospital;
3)      Inserted a flashlight into Mr. Moore's rectum at the hospital; and
4)      The other present Defendant officer(s) failed to intervene to prevent other Defendants officer(s) from committing any of the above described acts.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether the Defendant officer(s) used excessive force in this case, consider all of the circumstances known to the officer(s) on the scene, including:

1.      The severity of the crime or other circumstances to which the officer(s) were responding;
2.      Whether Mr. Moore posed an immediate threat to the safety of the officer(s) or to others;
3.      Whether Mr. Moore was actively resisting arrest or attempting to evade arrest by flight;
4.      Whether Mr. Moore was uncooperative and resistive at the hospital;

5. The amount of time and any changing circumstances during which the Defendant officer(s) had to determine the type and amount of force that appeared to be necessary;

6. The type and amount of force used;

7. The availability of alternative methods to subdue Mr. Moore.

This instruction tacked together an instruction that the parties had agreed upon earlier, while Moore was represented by counsel, and part of a more general instruction submitted by the government. But it departed from those proposed instructions in at least two material respects:

First, the parties' joint proposed instructions had included the following: "If Mr. Moore proves to you by a preponderance of the evidence that any Defendant officer[s] punched, struck, or hit Mr. Moore in any way at the scene after he had already been placed into handcuffs, then that officer violated Mr. Moore's Fourth Amendment rights. . . . If Mr. Moore proves to you by a preponderance of the evidence that Defendant Officer Hembree inserted a flashlight into Mr. Moore's rectum at the hospital, then Defendant Officer Hembree violated Mr. Moore's Fourth Amendment rights." The instruction given to the jury contained no such clear statements.

Second, Defendants' separate proposed instruction on excessive force had concluded with the following language: "[T]he parties have agreed that if Mr.

Moore was punched or hit after he was placed in handcuffs, that such use of force was excessive and unconstitutional." The instruction given to the jury left out that caveat.

Without these clarifying statements, the final instruction as given appears to state that *even if* the jury determined that the Defendant officer(s) had taken any of the four listed actions—that is, even if they: "[u]sed force and inflicted injuries upon Mr. Moore once he was in handcuffs at the scene"; "[f]orcibly and unreasonable restrained Mr. Moore while a nurse took his temperature rectally, against Mr. Moore's wishes, at the hospital"; "[i]nserted a flashlight into Mr. Moore's rectum at the hospital"; or "failed to intervene to prevent other Defendants officer(s) from committing any of the above described acts"—the jury could still find that the force was justified by the circumstantial factors enumerated in the latter half of the instruction, including the severity of the crime for which Moore was arrested or the fact that he was "uncooperative and restive at the hospital."

So understood—which it most likely was, or else the whole part of the instruction beginning with "In determining" was excess—the instruction was legally erroneous. Once the arrest was accomplished, the listed factors could not have made actions such as the use of force to compel unwanted medical care or the insertion of a flashlight in Moore's rectum "objectively reasonable." *Graham v.*

*Connor*, 490 U.S. 386, 397 (1989). "[W]here there is no need for force, *any* force used is constitutionally unreasonable." *Headwaters Forest Def. v. Cnty. of Humboldt,* 240 F.3d 1185, 1199 (9th Cir. 2000), *vacated on other grounds*, 534 U.S. 801 (2001); *cf. Guy v. City of San Diego*, 608 F.3d 582, 589 (9th Cir. 2010) ("[E]ven when police officers reasonably must take forceful actions in response to an incident, and even when such forceful actions are permissible at first, if the officers go too far by unnecessarily inflicting force and pain after a person is subdued, then the force, unnecessary in part of the action, can still be considered excessive."). Moreover, the Fourth Amendment not only prohibits the use of excessive force, but "generally proscribes 'unreasonable intrusions on one's bodily integrity.'" *Fontana v. Haskin*, 262 F.3d 871, 878–79 (9th Cir. 2001) (quoting *Headwaters Forest Def.*, 240 F.3d at 1199). And "there can be no countervailing governmental interest to justify sexual misconduct." *Id.* at 880 (internal quotation marks omitted). Furthermore, pretrial detainees have rights "to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently." *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (citation omitted); *see also Ellis v. City of San Diego*, 176 F.3d 1183, 1192 (9th Cir. 1999) (denying qualified immunity to an officer accused of using excessive force in restraining an arrestee and forcibly

-5-

inserting a catheter to extract a urine sample—an act the court described as a "'gross personal indignity'" (quoting *Yanez v. Romero*, 619 F.2d 851, 855 (10th Cir. 1980))).

I thus cannot agree that if the jury found the events described in the instruction had occurred, it was entitled to find the absence of excessive force. Yet, the instruction was most likely read as allowing such a finding.

Nor can I conclude that any instructional error was harmless. Defendants argue that the jury instructions "properly set forth the legal standards pertaining to excessive force," but they do not argue that if the instruction was erroneous, the error was harmless. Consequently, the argument is waived. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009).

Even if it were not waived, a harmless error argument would fail. "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Dang*, 422 F.3d at 811 (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992)) (internal quotation marks omitted). It is not more probable than not that the jury's verdict resulted from factual determinations in favor of Defendants rather than from a misapprehension of law. *See Gambini v. Total Renal Care, Inc.,* 486 F.3d 1087, 1093 (9th Cir. 2007) (quoting *Swinton v. Potomac Corp.,* 270 F.3d 794, 805–06 (9th Cir. 2001)) ("[I]n

-6-

reviewing a civil jury instruction for harmless error, the prevailing party is not entitled to have disputed factual questions resolved in his favor . . . .").

It is quite possible that the jury found Moore not believable. But we cannot so conclude without making our own credibility finding on grounds separate from the plausibility of the alleged excessive force incidents—e.g., on the basis of the implausible explanation Moore gave for his presence in the house where he was arrested. We would then have to apply our credibility determination to Moore's account of the events underlying his excessive force claim. We may not do that. Instead, "we must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Kranovich*, 401 F.3d 1107, 1112–13 (9th Cir. 2005) (quoting *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996)) (internal quotation mark omitted); *see also United States v. Vallejo*, 237 F.3d 1008, 1021 (9th Cir.), *amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001) ("[T]he credibility of the witness is a question precisely within the province of the jury.").

I therefore would hold the excessive force instruction erroneous and not harmless.