**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10232 |
| Plaintiff - Appellee, | D.C. No. 1:13-cr-00511-JMS-1 |
| v. | |
| ERNESTO HERNANDEZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted June 9, 2015
Honolulu, Hawaii

Before: WARDLAW, BERZON, and OWENS, Circuit Judges.

Defendant-Appellant Ernesto Hernandez appeals his conviction of one count

of conspiracy to distribute and possess with intent to distribute methamphetamine,

in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), and one count of

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  We affirm.

**1.**  "We review the district court's decision to . . . exclude evidence for an abuse of discretion."  *United States v. Edwards*, 235 F.3d 1173, 1178 (9th Cir. 2000) (per curiam); *see also United States v. Osazuwa*, 564 F.3d 1169, 1173 (9th Cir. 2009).  "A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts."  *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) (en banc).  Despite a district court's error, where "there is a 'fair assurance' of harmlessness . . .[, i.e.,] it is more probable than not that the error did not materially affect the verdict," we will affirm.  *United States v. Moran*, 493 F.3d 1002, 1014 (9th Cir. 2007) (quoting *Morales*, 108 F.3d at 1040); *see also United States v. Seschillie*, 310 F.3d 1208, 1214–16 (9th Cir. 2002).  We have found evidentiary rulings not harmless where the other evidence was "insufficient to support a conviction beyond a reasonable doubt," *Edwards*, 235 F.3d at 1179, or where the excluded evidence "went to the heart of [the defendant's] defense."  *Moran*, 493 F.3d at 1014.

**2.**  "Rule 608(b) of the Federal Rules of Evidence authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness—subject . . . to the

balancing analysis of Rule 403." *United States v. Olsen*, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013); *see also* Fed. R. Ev. 608(b). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "As originally proposed[,] Fed. R. Evid. 608(b) prohibited the admission of remote acts of misconduct"; however, "Congress deleted this requirement" "[i]n order to encourage flexibility" in the district courts' evidentiary rulings. *United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989) (citation omitted). Thus, though remoteness remains relevant to the probative value of Rule 608(b) evidence, even remote acts of untruthfulness may be found to have probative value. *See id.*

**3.** We assume, without deciding, that the district court abused its discretion in precluding the defense from cross-examining Costa about the prior incident of untruthfulness, which was serious, even if remote. Assuming the district court did err, however, that error was harmless. The other evidence was more than sufficient to support Hernandez's conviction, *see Edwards*, 235 F.3d at 1179, and Costa's credibility did not go "to the heart of" Hernandez's defense, *Moran*, 493 F.3d at 1014.

3

Even without Costa's testimony, there was extensive evidence from which a reasonable jury could conclude beyond a reasonable doubt that Hernandez was guilty of both the conspiracy and possession counts. *See Edwards*, 235 F.3d at 1179. Several law enforcement witnesses testified about the discovery of the parcel containing methamphetamine and investigators' controlled delivery of that parcel to the Waaula Street address where Hernandez was arrested. Co-conspirator Patrick Duy implicated Hernandez in a years-long methamphetamine importation scheme. Duy's testimony that Hernandez had ordered the parcel's delivery, opened the parcel, and retrieved its contents corresponded precisely with DEA Agent Richard Jones's testimony that Hernandez alone of the four Waaula Street occupants was found to have fluorescent Sirchie powder—which investigators had placed on the interior of the parcel only—on his hands. Additionally, government witness Dina Ali-Bang testified that she had purchased $5,000 of money orders for Hernandez, and that he had told her they were to send to his family in Mexico; the jury was entitled to disbelieve Hernandez's flat denial that he had ever asked Ali-Bang to do so, particularly given evidence suggesting co-conspirator Joseph Robaczewski had purchased additional postal money orders around that time, and that the money orders had all been sent to an address in San Ysidro, California.

The government also benefitted from Hernandez's own entirely unpersuasive and shifting testimony. Hernandez could not indicate which part of the parcel had allegedly been on fire, undermining his explanation for how he might have gotten Sirchie powder on his hands. He ultimately testified that he had used his hands only to put out flames on the outside of the parcel, yet DEA Agent Jones testified he had confirmed there was no Sirchie powder on the exterior of the package. Hernandez's claim that he had been burned from putting out the flames was also contradicted by Jones's testimony that Hernandez's hands were not injured when he inspected them closely for Sirchie powder. Finally, Hernandez was forced to retract his claim that he had not used methamphetamine for 14 or 15 years and instead admit that he had in fact tested positive for methamphetamine barely six months before his arrest, which cannot have helped his credibility with the jury. The recent usage also tended to support Duy's testimony that Hernandez had frequently used and sold methamphetamine for years before his arrest.

If Costa had been the only law enforcement witness, then perhaps Hernandez's ability to introduce reasonable doubt as to Costa's credibility would have gone "to the heart of [his] defense." *Moran*, 493 F.3d at 1014. In this case, however, Costa's testimony was extensively corroborated by the testimony of other law enforcement witnesses. Presumably for that reason, Hernandez's defense was

not premised on undermining the law enforcement witnesses' testimony. Rather, Hernandez's defense attempted to convince the jury that Hernandez was a patsy who had been set up by Duy and Robaczewski. Impeaching Costa with his prior incident of untruthfulness, however serious that incident may have been, would have done little to advance that ultimately unsuccessful defense.

**AFFIRMED.**