**James Sidney KEYES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18131.**

United States Court of Appeals
Ninth Circuit.

Feb. 11, 1963.

120

William F. Lockett, Seattle, Wash., for appellant.

Brockman Adams, U. S. Atty., and David J. Dorsey, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and CROCKER, District Judge.

HAMLIN, Circuit Judge.

James Sidney Keyes, appellant herein, was convicted by a jury in the United States District Court for the Western District of Washington of a violation of 18 U.S.C. § 2312.[1] This appeal was timely taken from the judgment and sentence of imprisonment thereafter imposed by the district judge. Jurisdiction is conferred on this court by the provisions of 28 U.S.C. § 1291.

The sole question on this appeal is whether there was sufficient evidence in the record of appellant's knowledge that the automobile in his possession was stolen to submit to the jury.

The evidence showed that at the time of his arrest on or about March 7, 1961, in Seattle, Washington, appellant was in possession of a 1960 Cadillac convertible automobile, which bore a California license plate on the rear bumper and a temporary white California used vehicle certificate (No. 1801177) in the front windshield of the car. The appellant at that time stated to a Seattle police sergeant that he had purchased the car in Los Angeles for the sum of $3500 from Mr. Silverthorne of the Associated Auto Auction of Los Angeles, that it was his (appellant's) signature on the temporary certificate, and that the certificate had been filled out by Mr. Silverthorne.

An F.B.I. agent testified that on March 9, 1961, he interviewed appellant at the Seattle police department, and that during the conversation appellant stated that the Cadillac automobile had been purchased by him from a Mr. Silverthorne of the Associated Auto Auction of Los Angeles for the sum of $3700. He stated that he had received a receipt but that "it was in his brief case and that if he were out on the street he could have located the receipt." The F.B.I. agent again interviewed appellant on March 22, 1961, and in the second conversation the appellant stated that he had purchased the Cadillac automobile in question from a man named Silverthorne, who was approximately 50 years of age, for $3700 cash, and that he had driven the Cadillac from California to Seattle to obtain work in the carnival line.

The car was identified by a used car manager for Martin Motors of Santa Monica, California, as one which disappeared from the Martin Motors lot on February 26, 1961. This witness testified that he had reported the disappearance of the automobile as a stolen car to the Santa Monica, California police, and that after the car in question had been recovered by his firm in Seattle, Washington, it had been returned to California where it was sold for the sum of $4815.

Mr. Jack B. Silverthorne testified that he was president and manager of the

1. § 2312. Transportation of stolen vehicles

"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,-000 or imprisoned not more than five years, or both."

Automobile Associated Auction Company of Los Angeles, California, and identified the temporary California used vehicle certificate, which was on the Cadillac when appellant was arrested, as being one that had been stolen from a Report of Sales book located in his office.[2] He testified that he passed upon all sales made by members of the firm and that his firm had never handled a 1960 Cadillac convertible automobile. He further testified that his father's name was Alex Silverthorne and that his father had died November 3, 1961, at the age of 79.

When the prosecution rested, the defendant called as a witness a police officer to whom he had made a statement in Seattle. This officer testified that the appellant told him that he went to an auction to look at cars, but saw none that he liked and left his name and address with the salesman; that the salesman came to his residence that evening, showed him the Cadillac, and that he purchased it for $3700 cash at that time, taking possession of the car that evening; and that he had misplaced the brief case in which he had placed a receipt and did not know where it was, but that he could find it "if he was given enough time."

Appellant testified that he went to an automobile auction one night, but did not see anything that he liked. However, he met a salesman there by the name of Alex Silverthorne, showed the salesman his money, and said, "If anything comes your way that looks nice I'd appreciate it if you'd, you know, keep me in mind." Appellant further testified that the next day the same salesman came by with the 1960 Cadillac and wanted $4000 for it and that appellant got the price down to $3700, whereupon the salesman left and came back in about a half hour with the papers filled out. Appellant then gave the salesman $3700 in cash, obtained a receipt therefor, took the car, and the next day left for Seattle. In order to get enough money to buy the car, appellant testified that he borrowed $500 from his uncle and some from his mother's estate. The fact that appellant had previously been convicted of a crime was brought out on direct examination.

On cross-examination, when asked why he had first told the officers that he had paid $3500 for the car, he was unable to give an explanation, but did not deny making the statement. When questioned concerning the receipt, he stated that it had been in his custody and was in his brief case in his hotel room while he was in jail. On further cross-examination, he stated that he had paid one-half of the purchase price to the salesman in the lobby of his hotel and that the salesman had then left. He later stated that he had given the salesman "approximately $1000." When asked whether he had got a receipt for the $1000 or possession of the car when he paid the salesman that amount, he stated that he had received neither possession nor a receipt at that time. Upon completion of his cross-examination, a receipt for $3700, which had been produced at the trial, was introduced into evidence. It read as follows:

"No........
                2/28 1960
"Received of JAMES S. KEYES
"Thirty Seven Hundred and No/100 Dollars
1960 Cad. Con. Paid in Full
$3700.00
      ALEX SILVERTHORNE"

The prosecution then recalled Jack Silverthorne who after examining the receipt, stated that it was not on the form which had been used by his firm in mak-

---

2. A report had been made by him of the theft of the certificate from the company's Report of Sale book. The blank stub numbered 1801177 of the missing report of sale was in the book between stubs dated February 23, 1961, and February 24, 1961. The book was kept in a position in the office where it could be stolen by one wanting to steal vehicle identification.

ing receipts and that neither the signature thereon nor any of the handwriting was his father's.

■ Appellant's knowledge that the car was stolen can be established by circumstantial evidence.[3] In Morandy v. United States,[4] this court approved the following instruction that had been given by the trial judge in that case:

> "[T]he law is that the possession of the fruits of a crime recently after its commission,—namely, here, the automobile, in the absence of an explanation justifying the possession, warrants an inference pointing towards guilt."

Appellant does not seem to quarrel with this rule, but contends that it is not applicable where an explanation is given by an accused as to how he obtained the stolen property. He contends that his explanation was reasonable and that therefore his conviction was not justified.

■ Inconsistent statements made by appellant and other testimony in the case, however, cast doubt both upon the reasonableness of his explanation and upon his credibility. Whether his story was reasonable and whether he was telling the truth were properly questions for the jury. The jury could have considered, *inter alia,* the following:

Appellant's contradictory statements concerning the purchase price and the time when and the manner in which the purchase was made.

His statement upon direct examination that he gave $3700 in cash to the salesman and got a receipt, while on cross-examination he first stated that he paid one-half the purchase price, and later stated that he paid approximately $1000 to the salesman who left without giving him a receipt or possession of the car.

The fact that the Cadillac when recovered was sold for $4815.

His failure to produce the receipt at the time of his arrest.

His explanation to the officers that the receipt was in his brief case but that he didn't know where his brief case was, compared with his testimony on the witness stand that the receipt was in his brief case in his hotel.

His production almost a year later at the time of the trial of a receipt which was dated in 1960, a year before the claimed transaction and which merely described a "1960 Cad. Con." without giving a serial number or other description of the automobile.

The testimony of Jack Silverthorne that neither the writing nor the signature on the receipt was in the handwriting of Alex Silverthorne, his father, nor was it on the form used by his firm.

The fact that appellant was in the Los Angeles area at the time the car was stolen and admittedly drove the car from California to Washington.

The testimony of Jack Silverthorne that his firm had never sold a similar automobile.

The fact that appellant had previously been convicted of a crime.

We hold that there was ample evidence in the record to justify the submission of the case to the jury and to support the verdict of guilty.

Judgment affirmed.

---

3. United States v. Angel, 201 F.2d 531, 533 (7th Cir. 1953).

4. 170 F.2d 5, 6 (9th Cir. 1948) ; see also United States v. Angel, supra note 3.