# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

  v.

JAMES MORAN,
    *Defendant-Appellant.*

No. 05-30215

D.C. No.
CR-02-00423-007-
JCC

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

  v.

PAMELA MORAN,
    *Defendant-Appellant.*

No. 05-30226

D.C. No.
CR-02-00423-006-
JCC

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Chief District Judge, Presiding

Argued and Submitted
December 4, 2006—Seattle, Washington

Filed April 2, 2007
Amended July 6, 2007

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and William W Schwarzer,* District Judge.

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

Per Curiam Opinion

## COUNSEL

Sheryl Gordon McCloud, Law Offices of Sheryl G. McCloud, Seattle, Washington; Peter Mair, Seattle, Washington, Walter G. Palmer, Seattle, Washington, for defendants-appellants Grosnickle, James Moran and Pamela Moran; Ronald D. Ness, CJA, Port Arthur, Washington, for defendant-appellant Wayne S. Anderson.

Gregory Victor Davis and Alan Hechtkopf, Attorneys, Tax Division, Department of Justice, Washington, D.C., for the plaintiff-appellee.

## ORDER

Appellee's petition for rehearing is denied. The Opinion filed on April 2, 2007 is amended as follows:

On slip Opinion page 3753, line 14, delete <tax> before <schemes.>.

On slip Opinion page 3755, line 10, delete <tax> before <program,>.

On slip Opinion page 3755, line 12, delete <tax> before <program.>.

On slip Opinion page 3761, line 19, delete <tax> before <programs>.

On slip Opinion page 3765, line 29, insert the following footnote after the word <objections.>: <In its petition for

rehearing, the government contends that the court erred in reversing the Morans' conviction on the wire and mail fraud counts, arguing that those counts were based not on the Morans' willful violations of the tax laws but on their misrepresentations to clients regarding the existence and validity of the loans in the "Look Back" program and the legitimacy of the fees AAA collected. However, the tax fraud and wire and mail fraud counts were inextricably intertwined in the government's case. Count Two of the second superseding indictment, the wire and mail fraud count, incorporated by reference all but one of the 376 paragraphs of Count One, the tax fraud count. In its opening statement, the government asserted that "these programs were nothing more than a tax fraud scheme," and the jury instructions were limited to generic fraud without distinguishing between evidence bearing on one or the other count. Finally, the Hayes letter questioned the legitimacy of the programs that were the subject of the wire and mail fraud counts; in barring Mrs. Moran from testifying about legal opinions she had received about the CBO program after the government had cross-examined her about the letter, the court prevented her from presenting a good faith defense to those counts as well.>.

Future petitions for rehearing and petitions for rehearing en banc will not be entertained.

---

**OPINION**

PER CURIAM:

Pamela and James Moran appeal their convictions of conspiracy to defraud the United States (18 U.S.C. § 371), conspiracy to commit wire and mail fraud (18 U.S.C. § 371), aiding and assisting in the preparation and filing of false federal income tax returns (26 U.S.C. § 7206(2)), mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343). They con-

tend that the district court erred in four ways: (1) by allowing expert testimony that certain financial transactions were "shams"; (2) by giving allegedly improper *Pinkerton* instructions to the jury; (3) by admitting codefendant Wayne Anderson's computer records as coconspirator statements;[1] and (4) by excluding Mrs. Moran's testimony regarding outside expert opinions she had received about the legality of the Morans' schemes. We find no error in allowing the expert testimony, admitting the computer records, or in the jury instructions. However, because the district court erroneously excluded Mrs. Moran's testimony as hearsay and did not provide a reasoned basis for excluding it under Federal Rule of Evidence 403, and because this testimony would have comprised a critical element of the Morans' good faith defense, we reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL HISTORY

Anderson's Ark and Associates (AAA) offered clients several forms of "tax reduction plans" (according to the government, offshore money laundering plans), and promoted these plans in public seminars. Appellants Pamela and James Moran were the "Executive Education Officers" who trained the AAA sales force.

AAA offered several programs to customers who had paid for and successfully completed the membership application process. The "Sociedads Anonima" (SA) program allegedly provided Costa Rican corporate entities through which to pass United States funds. The "Look Forward Partnership" program allegedly allowed clients to take tax deductions on money invested in the SAs and subsequently repatriate the money tax-free by paying for nonexistent services. The "Look Back Joint Venture" program allegedly provided a tax shelter

---

[1] Karolyn Grosnickle, who filed joint briefs with the Morans in this appeal, joined in the first three arguments. Mrs. Grosnickle has since withdrawn her appeal, and so is not included in this opinion.

by generating fictitious losses as part of fictitious loans to Costa Rican corporations which were ostensibly going to develop and market a "Tax Magic" program. Finally, the "Loan 4" plan, while marketed as a way to earn tax-free returns on the funds clients had transferred to Costa Rica, allegedly was actually a Ponzi scheme.

On December 10, 2002, December 4, 2003, and August 11, 2004, the United States filed initial, first, and second superseding indictments against Pamela Moran, James Moran, and eight other defendants. The Morans were indicted on numerous counts of conspiracy, wire and mail fraud, aiding and assisting in the preparation and filing of false federal income tax returns, and other substantive offenses related to the conspiracies.

At trial, the court sustained the government's hearsay objection to Mrs. Moran's testimony about what her CPA had told her concerning filing statements in place of Form 1040 with the IRS; in sustaining the objection, the court also cited Federal Rule of Evidence 403. On a later occasion, after the government had cross-examined Mrs. Moran about a letter she had seen from an outside lawyer expressing concerns about the AAA program, defense counsel on redirect asked Mrs. Moran whether anybody else had given her a legal opinion about the program. Again, the court sustained the government's objection on hearsay and Rule 403 grounds.

As part of the government's case, an expert testified that the AAA programs involved "sham" transactions. The term "sham" was also used as part of the jury instructions on the counts involving assistance in filing false tax returns. The judge also gave the jury *Pinkerton* instructions, stating that they could convict one defendant of the substantive crime of a coconspirator if the crime was committed in furtherance of that conspiracy. Finally, over objection, Wayne Anderson's computer records were admitted under Federal Rule of Evi-

dence 801, which exempts co-conspirator statements from the hearsay rule.

On December 27, 2004, following a thirty-seven day jury trial, Pamela and James Moran were convicted on thirty-six counts each, including the conspiracy counts. This timely appeal followed.

## DISCUSSION

## I. "SHAM" TRANSACTION TESTIMONY

Appellants contend that by testifying that the Look Forward program was "a sham," Professor Sherman offered an impermissible legal conclusion and vouched for the credibility of certain witnesses. They also argue that the "sham" transaction instruction improperly provided a nonstatutory basis for conviction. Neither of these arguments has merit.

[1] Generally, an expert can testify on an ultimate issue in a case, except regarding the requisite mental state of the defendant or a condition constituting an element of or defense to the crime. Fed. R. Evid. 704. However, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation and citation omitted). As appellant objected to the testimony before and during trial, "[w]e review a district court's decision to admit expert testimony for abuse of discretion." *United States v. Perlaza*, 439 F.3d 1149, 1175 n.29 (9th Cir. 2006).

[2] The "sham" testimony related to the second element of the offense: that "the return was false as to something that was necessary to a determination of whether income tax was owed." Thus, the word "sham" does not address a legal con-

clusion. Under the judge's instructions, even if the transactions were a sham, "the jury would still have had to draw its own inference from that predicate testimony to answer the ultimate factual question," of whether income tax was owed. *See United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997). While use of an expert's term in the jury instructions may not have been ideal, it was not erroneous.

Appellants also argue that by testifying that the Look Forward program was fraudulent, contrary to the testimony of some clients who believed that the transactions were real, Professor Sherman improperly vouched for the veracity of government witnesses.

It is misconduct for a prosecutor to elicit comments on the veracity of witnesses or the guilt of the defendant. *See, e.g.*, *United States v. Combs*, 379 F.3d 564, 572 (9th Cir. 2004) (finding error where prosecutor asked defendant to testify that government agent was lying); *United States v. Henke*, 222 F.3d 633, 642 (9th Cir. 2000) (finding that admission of testimony that defendants "must have known" of misconduct was erroneous). Nothing of the sort occurred here; Sherman never referred to a single witness or discussed the veracity of witnesses generally. That an expert reaches a conclusion that either agrees with *or* conflicts with that of a witness whose testimony he incorporated into his conclusions, does not without more constitute vouching. There was no error.

**[3]** Finally, appellants argue that the instruction defining "sham" transactions was untethered to any element or particular crime, and allowed the jury to convict defendants without finding the elements of a crime. When assessing jury instructions, we examine them "as a whole, and in context." *United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir. 2002). The instruction complained of merely defined a sham transaction; it did not state that such a transaction standing alone is a basis for conviction. Read in context with the instructions as a whole, it provided guidance to the jury in determining

whether the AAA program could provide a valid tax deduction which, in turn, led to the determination whether the income tax returns were false. There was no error.

## II. *Pinkerton* INSTRUCTIONS

**[4]** The Morans argue that the district court's conspiracy instructions, based on *Pinkerton v. United States*, 328 U.S. 640 (1946), allowed the jury to convict one defendant of a substantive crime committed by another defendant, even when that crime was not part of a conspiracy in which *both* defendants took part. Under *Pinkerton*, a defendant may be found guilty of a substantive crime committed by a coconspirator in furtherance of their conspiracy. *Id.* at 646-47. In the absence of a timely objection to the jury instructions, we review for plain error. *See United States v. Sanders*, 421 F.3d 1044, 1050 (9th Cir. 2005). In evaluating jury instructions, "[w]e consider how the jury would have reasonably understood the challenged instruction in the context of the instructions as a whole." *United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994) (citing *Francis v. Franklin*, 471 U.S. 307, 315 (1985)).

The jury instructions in question (as read by the district judge) were as follows:

> Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of the conspiracy, the other members have also, under the law, committed the crime.
>
> . . .
>
> Therefore, you may find a defendant guilty of one or more of the substantive counts alleged in the indict-

ment if the government has proved each of the following elements beyond a reasonable doubt:

A person named in a substantive count of the indictment committed the crime alleged in that count.

The same person was a member of the conspiracy charged in counts 1, 2 or 98.

The person committed the substantive crime in furtherance of the conspiracy charged in counts 1, 2 or 98.

The defendant was a member of the conspiracy charged in counts 12 [sic] or 98 at the time the offense charged in the substantive count was committed by the other person.

And the conduct constituting the substantive count fell within the scope of the unlawful agreement and could reasonably have been foreseen to have been a necessary or natural consequence of the unlawful agreement.

Appellants contend that, using only the elements listed, one defendant could be convicted of a second defendant's substantive crime if the two were involved in a *separate* conspiracy which did not involve that particular crime.

[5] While a careful picking apart of the instructions' wording does reveal minor ambiguity, when read in its entirety, the instructions were clear and did not permit such an improper conviction. The first paragraph lays out the point of the instruction: that if one member of a conspiracy commits a crime in furtherance of the conspiracy, the other members can be found liable of that crime. Thus, while the wording of the individual instructions may not have been perfect when examined under a microscope, when read as a whole it would have

been clear to a jury that before it could convict a defendant of a substantive count committed by a codefendant, it had to find that the conduct underlying that count fell within the scope of a conspiracy of which both defendants were members and was reasonably foreseeable under the conspiracy. There was no error.

## III. ADMISSION OF COMPUTER RECORDS

Over objection, the district court admitted as coconspirator statements testimony and related exhibits regarding the Quickbooks financial data recovered from Wayne Anderson's computer. Appellants contend that the admission of these records against them was error because the records were not kept in furtherance of the conspiracy.

**[6]** "We review for an abuse of discretion the district court's decision to admit coconspirators' statements, and review for clear error the district court's underlying factual determinations that a conspiracy existed and that the statements were made in furtherance of that conspiracy." *United States v. Shryock*, 342 F.3d 948, 981 (9th Cir. 2003) (citing *United States v. Bowman*, 215 F.3d 951, 960 (9th Cir. 2000)). When offered against a party, "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not barred by the hearsay rule. Fed. R. Evid. 801(d)(2)(E); *Bowman*, 215 F.3d at 960-61 (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

**[7]** Appellants argue that Anderson was keeping the books for his own purposes, not in furtherance of a conspiracy. Statements made for personal objectives outside the conspiracy or as part of idle conversation are not admissible under Rule 801(d)(2)(E). *See, e.g.*, *United States v. Bibbero*, 749 F.2d 581, 584 (9th Cir. 1984) (holding statements in idle conversation inadmissible). However, "statements made to keep coconspirators abreast of an ongoing conspiracy's activities

satisfy the 'in furtherance' of requirement." *United States v. Yarbrough*, 852 F.2d 1522, 1536 (9th Cir. 1988).

**[8]** The district court determined that the government had shown by a preponderance of the evidence that the computer records were statements by Wayne Anderson in furtherance of the conspiracy. The computer was seized from a home belonging to Anderson. Access to the computer was protected with a password. At least one account was in Anderson's name. The computer contained numerous documents relating to AAA, including a Quickbooks database reflecting financial data about the various AAA principals, clients and programs. Taken together, these facts tend to show that the computer records were used to keep track of transactions which were a part of AAA's fraudulent schemes; as the district court observed, "[I]n any conspiracy that involves complex financial transactions, it is in furtherance of the conspiracy to maintain a record of those transactions."

**[9]** While appellants offered evidence that the records were inaccurate, suggesting that they were meant to deceive, not inform Anderson's coconspirators, which would render them inadmissible, they have not demonstrated clear error in finding them to be coconspirators' statements.

**[10]** Finally, the alleged evidence of inaccuracies in the computer records does not affect their admissibility, but merely goes to their weight. *See Bourjaily*, 483 U.S. at 183 ("[A] court need not independently inquire into the reliability of [coconspirator] statements."). The district court did not err in admitting the Quickbooks data.

## IV.  MRS. MORAN'S TESTIMONY

The Morans argue that by excluding Mrs. Moran's testimony about advice she received from outside financial and legal experts, the district court committed reversible error. Mrs. Moran's principal defense was that she held a good faith

belief that the programs in which she participated were legal. She contends that her belief was based, among other things, on opinions from a CPA and outside experts. The district court sustained objections to her testimony about what she had been told on grounds of hearsay and Rule 403.[2]

On two occasions during the trial, the district court excluded testimony by Mrs. Moran about what she had learned from outside experts. On the first occasion, she started to testify what the CPA preparing her statements to the IRS had told her. When the prosecution objected to "hearsay," the court sustained the objection and added, "That's a 403 analysis . . . that the probative value is outweighed by the potential for prejudice."[3]

---

[2]Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[3]The first exchange was as follows:

Q. (By Ms. Costello [defense counsel for Mrs. Moran]) Did you at some point file statements with the IRS? Could you just tell the jury what you did?

A. Yes, we did. After we had realized that this is not helping us at all not to be filing tax returns at all, we did receive further information that to file a statement according to code section 601(12), I believe, that that is what you should do rather than filing a form 1040. And just declare that you are someone who is not required to pay the income tax. And attach to that statement all the authorities cited stating why you believe that you sincerely are not someone who would be eligible to file a tax.

Q. And what years did you do that?

A. We did that for 19 — I did that for 1995, '96 and '97. And then 2001, 2002.

. . .

Q. And you mentioned receiving income from your SA?

The second exchange occurred following the cross-examination of Mrs. Moran, during which the government questioned Mrs. Moran regarding a letter she had received from an outside attorney in which that attorney had questioned the legality of AAA's programs.[4] On redirect, Mrs.

---

A.  Yes.

Q.  Why didn't you put that on the statement in lieu of a tax return?

A.  The CPA preparing those statements for us told us —

MS. TONGRING [counsel for the government]: Objection. Hearsay.

THE COURT: Sustained.

Q.  (By Ms. Costello) Why didn't you file — okay, I'll move on.

THE COURT:  That's a 403 analysis, counsel, that the probative value is outweighed by the potential for prejudice.

[4]On cross-examination, the following occurred:

Q.  Now, I want to turn to what's been admitted into evidence as government's exhibit 2016, please, starting at the bottom. Actually if we can turn to the second page, please. This is a letter that was sent from Mr. Hayes, Stephen Hayes to your husband and Ms. La Grand. You've seen this letter before, haven't you, Mrs. Moran?

A.  Yes.

. . .

Q.  (By Ms. Tongring) In this letter, Mr. Hayes indicates that he had serious concerns regarding the Anderson's Ark program, the Look Back program, doesn't he?

MR. ENGELHARD [counsel for defendant Tara La Grand]: Your Honor, I'm going to object. This letter speaks for itself.

THE COURT: Sustained.

. . .

Q.  And you knew that Mr. Hayes had these serious concerns, did you not, in April of 1999?

Moran attempted to testify about legal opinions she had received from outside experts; the government objected (without specifying grounds), and the court sustained the objection, referring to both Rule 403 and the hearsay rule.[5]

---

> A.  Well, Mr. Hayes must have been the information officer for Mr. And non [sic] and that was his job to take care of any issues that would come up. So, I can see that he would be just following through there.
>
> . . .
>
> Q.  (By Ms. Tongring) Sure. You knew that Stephen Hayes, the man who wrote this letter, had no connection to Anderson's Ark. Isn't that correct?
>
> A.  Well, we didn't really understand much about this at all. We did receive the letter from a Mr. Hayes. And that's about all I can tell you. Obviously he was not a part of Anderson's Ark.
>
> Q.  But in it he said that he had concerns about this program?
>
> A.  Yes.
>
> [5]The second exchange concluded as follows:
>
> Q.  Were you aware — did anybody else give you their legal opinion about the program, the CBO program?
>
> A.  We had had several give us their —
>
> MS. TONGRING: Objection.
>
> THE COURT: I'm going to sustain the objection on 403 grounds. I'm going to exclude the testimony.
>
> MS. COSTELLO: Your Honor, I believe I was — may I be heard briefly on this?
>
> THE COURT: Yes.
>
> (At sidebar, out of the hearing of the jury:)
>
> MS. COSTELLO: I believe that the prosecutor opened the door by asking the question about Steve Hayes.
>
> THE COURT: No.
>
> MS. COSTELLO: And leaving it unanswered —

## A.   Whether the District Court Committed Error

A district court's ruling excluding testimony is reviewed for abuse of discretion. *United States v. Sure Chief*, 438 F.3d 920, 925 (9th Cir. 2006). However, when the court excludes evidence under Rule 403 but does not engage in explicit balancing, we review such a determination de novo. *United States v. Boulware*, 384 F.3d 794, 808 n.6 (9th Cir. 2004).

**[11]** "[W]illfulness is an element in all criminal tax cases." *United States v. Bishop*, 291 F.3d 1100, 1106 (9th Cir. 2002). "Willfulness . . . requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* The burden is on the government to negate the defendant's claim that he had a good faith belief that he was not violating the tax law. *Id.* "Good faith reliance on a qualified accountant has long been a defense to willfulness in cases of tax fraud." *Id.* The defendant is entitled to testify about the tax advice he received—subject, of course, to cross-examination—and exclusion of this testimony is error. *Id.* at 1111. Not only is testimony about the reliance on qualified experts relevant to establishing this defense, but the defendant "[has] the right to tell the court his own version of the tax advice on which he claim[s] to have relied." *Id.* Such testimony does not constitute hearsay when not offered for the

---

THE COURT: No.

MS. COSTELLO — the inference is that's the only opinion she ever got.

THE COURT: The objection is sustained.

(Within the hearing of the jury:)

THE COURT: Counsel, let me add for the record any testimony of that type will have to come from the person who gave the advice and who will be subject to cross-examination. I'm not going to permit it in through hearsay. Through 403.

truth of the matter stated. *Id.* Because there is an intent element in fraud cases, good faith belief in legality also provides a defense to the fraud counts. *See, e.g.*, *United States v. Amlani*, 111 F.3d 705, 717-18 (9th Cir. 1997) (wire fraud); *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979) (mail fraud). The government's brief concedes that Mrs. Moran was entitled to testify about what outside experts told her but argues that she did not do so. The record makes clear that she did try—twice—but was stopped by the court's sustaining the government's objections.[6]

**[12]** To the extent the court excluded the disputed testimony from Mrs. Moran's redirect as hearsay, it was error since the testimony was not offered for the truth of the matter asserted and thus its exclusion was an abuse of discretion. *See Bishop*, 291 F.3d at 1112. To the extent the ruling was based on Rule 403, we review it de novo because the court did not engage in explicit balancing of the Rule 403 factors. *See Sure Chief*, 438 F.3d at 925. The government defends the exclusion on the ground that the cross-examination exceeded the scope

---

[6]In its petition for rehearing, the government contends that the court erred in reversing the Morans' conviction on the wire and mail fraud counts, arguing that those counts were based not on the Morans' willful violations of the tax laws but on their misrepresentations to clients regarding the existence and validity of the loans in the "Look Back" program and the legitimacy of the fees AAA collected. However, the tax fraud and wire and mail fraud counts were inextricably intertwined in the government's case. Count Two of the second superseding indictment, the wire and mail fraud count, incorporated by reference all but one of the 376 paragraphs of Count One, the tax fraud count. In its opening statement, the government asserted that "these programs were nothing more than a tax fraud scheme," and the jury instructions were limited to generic fraud without distinguishing between evidence bearing on one or the other count. Finally, the Hayes letter questioned the legitimacy of the programs that were the subject of the wire and mail fraud counts; in barring Mrs. Moran from testifying about legal opinions she had received about the CBO program after the government had cross-examined her about the letter, the court prevented her from presenting a good faith defense to those counts as well.

of direct. However, the government in its brief takes an unreasonably narrow view of the permissible scope of redirect, limiting it to what the defendants did or could have done in response to the concerns expressed in the Hayes letter. The government's questioning of Mrs. Moran raised the implication, as her counsel explained at trial, that the Hayes letter was the only opinion the Morans ever received, thus opening the door to redirect about what other legal opinions they had received.

**[13]** The government further argues that this testimony would have been cumulative because Mrs. Moran had previously testified to other opinions she had received. Those opinions, however, came from insiders, the principals and architects of the AAA plan, and not qualified outside professionals, and thus could be expected to carry significantly less weight with the jury. Thus, because the testimony was not hearsay, fell within the scope of redirect, and was not cumulative or otherwise in violation of Rule 403, the district court erred in excluding it.

## B.    Whether the Error Was Harmless

When testimony has been erroneously excluded, we apply the harmless error standard for nonconstitutional error. "We must reverse unless there is a 'fair assurance' of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997). "This standard requires that the Government show a 'fair assurance' that the verdict was not substantially swayed by error." *United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002).

**[14]** The government argues only that the district court's ruling did not deny Mrs. Moran's right to present a defense. We agree that her constitutional right was not violated. Mrs. Moran testified about advice she received from in-house advisers. The government has failed, however, to address its

burden to show a "fair assurance" that the verdict was not substantially swayed by the exclusion of evidence of opinions from outside experts. That evidence went to the heart of Mrs. Moran's defense, which entitled her to "rebut the Government's proof of willfulness by establishing good faith reliance on a qualified accountant after full disclosure of tax-related information." *Bishop*, 291 F.3d at 1106-07 (quoting *United States v. Claiborne*, 765 F.2d 784, 798 (9th Cir. 1985), *abrogated on other grounds, Ross v. Oklahoma*, 487 U.S. 81 (1988)). We conclude the error was not harmless.

## V. MR. MORAN

James Moran contends that since he also asserted a good faith defense, he is entitled to the same relief as Mrs. Moran. The government does not dispute that Mr. Moran raised a good faith defense but argues that the defense is specific to the individual: "Whether or not one person possesses a good faith belief in the legality of her actions has no effect on whether another person has a good faith belief." That statement is undoubtedly true, but it misconceives the issue. The question is whether the district court's ruling excluding evidence of outside professional opinions prejudiced Mr. Moran's defense.

**[15]** In *Bishop*, the government had charged Mr. Bishop, but not his wife, with violation of the tax laws. 291 F.3d at 1105. The defendant called Mrs. Bishop to testify about tax advice she and her husband had received from an accountant to show Bishop's good faith reliance on professional advice. *Id.* at 1111-12. The government's objection was sustained. *Id.* at 1112. On appeal, we held that it was error to exclude the evidence, stating:

> While Ms. Bishop's own state of mind was not an issue in the case, her testimony would have been relevant and would have qualified as circumstantial evidence to prove [Mr.] Bishop's state of mind.

[Mr.] Bishop's state of mind is also relevant to Cardenaz, as they were convicted of conspiring, and this crime requires willfulness.

*Bishop*, 291 F.3d at 1112. Here, the Morans were charged as coconspirators. The testimony sought from Mrs. Moran concerning professional opinions about the tax scheme with which they were jointly charged would have been relevant as circumstantial evidence to prove the state of mind of her husband and coconspirator, James Moran.

[16] The testimony at trial underlines the relevance of Mrs. Moran's testimony to Mr. Moran's defense. In her testimony, she often used the words "we" and "our," referring to her husband and herself when explaining their participation in AAA. The letter from Mr. Hayes about which Mrs. Moran was cross-examined was addressed in part to Mr. Moran. And most notably, when asked on redirect about outside expert opinions, Mrs. Moran stated that "*we* had had several give us their . . ." (emphasis added) before she was cut off. The court issued no limiting instructions regarding crossover of evidence between the Morans, and it appears that no such instructions were requested. Moreover, by the time Mr. Moran testified—after Mrs. Moran—the court had already made it clear that it was not going to permit testimony about the opinions of outside experts. But for this error, Mr. Moran would have had the opportunity to present evidence of the advice he received.

[17] The convictions of defendants Pamela Moran and James Moran are **VACATED** and the case is **REMANDED** for a new trial.[7]

---

[7]The district court entered a forfeiture order based on the convictions of the Morans under 18 U.S.C. §§ 1341 and 1343. Because we vacate the convictions, we also vacate the forfeiture order.