**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

JULIO GABRIEL DIAZ,
    *Defendant-Appellant.*

</td><td>

No. 15-50538

D.C. No.
8:12-cr-00011-CJC-1

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted October 6, 2017
Pasadena, California

Filed December 6, 2017

Before: Andrew J. Kleinfeld, Susan P. Graber,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for distributing controlled prescription drugs in violation of 21 U.S.C. § 841(a)(1), in a case in which the defendant contended that the government's expert witness offered a legal conclusion in violation of Fed. R. Evid. 702 and 704.

The panel held that if the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion. The panel held that the district court in this case did not plainly err by admitting the expert testimony of a witness who did not substitute his judgment for the jury's but provided a professional opinion about whether a course of conduct comported with the standard of care prevalent in the medical community.

For reasons stated in a concurrently-filed memorandum disposition, the panel vacated the sentence and remanded for resentencing.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Davina T. Chen (argued), Glendale, California, for Defendant-Appellant.

Ann Luotto Wolf (argued), Assistant United States Attorney; Dennise D. Willett, Chief, Santa Ana Branch Office; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

Dr. Julio Diaz appeals his conviction and sentence under 21 U.S.C. § 841(a)(1), contending that the government's expert witness offered a legal conclusion in violation of Federal Rules of Evidence 702 and 704. We reject his contention and affirm his conviction.[1]

## BACKGROUND

From 1995 until 2011, Dr. Julio Diaz operated a clinic in Santa Barbara that catered to geriatric patients. In 2005, the clinic also started offering pain management and treatment. According to the government, this aspect of Diaz's practice soon evolved into little more than a facade for the illegal distribution of narcotics. Between 2008 and 2011, Diaz wrote more than 50,000 prescriptions and prescribed more

---

[1] Diaz's other challenges to his conviction and sentence are addressed in an unpublished memorandum disposition filed concurrently with this opinion.

than 5 million opiate pills, with several patients being prescribed, on average, more than 60 tablets per day. In 2012, Diaz was indicted for 88 counts of distributing controlled prescription drugs in violation of 21 U.S.C. § 841(a)(1). The government eventually proceeded to trial on 79 of those counts, each count representing a prescription that Diaz wrote for one of nine patients.

To secure a conviction under 21 U.S.C. § 841(a)(1), the government had to prove:

> (1) that the practitioner distributed controlled substances, (2) that the distribution of those controlled substances was outside the usual course of professional practice and without a legitimate medical purpose, and (3) that the practitioner acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice.

*United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006) (emphasis omitted). At trial, the government introduced an expert witness, Dr. Rick Chavez, who testified, without objection, that Diaz's prescriptions were written "outside the usual course of medical practice" and "without a legitimate purpose." The jury eventually convicted Diaz of all 79 counts, and the district court imposed a sentence at the maximum of the applicable range under the Sentencing Guidelines—327 months. Diaz timely appeals, arguing that Dr. Chavez impermissibly offered opinion testimony as to a legal conclusion. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**STANDARD OF REVIEW**

Because Diaz did not raise this issue before the district court, we review for plain error. *United States v. Mendoza-Paz*, 286 F.3d 1104, 1113 (9th Cir. 2002). Accordingly, we may:

> correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

**DISCUSSION**

Federal Rule of Evidence 702(a) requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Federal Rule of Evidence 704(a) clarifies that "[a]n opinion is not objectionable just because it embraces an ultimate issue." As the 1972 Advisory Committee note says, "the so-called 'ultimate issue' rule is specifically abolished by the instant rule." Thus, we held in *United States v. Davis*, 564 F.2d 840, 845 (9th Cir. 1977), *cert. denied*, 434 U.S. 1015 (1978), that after the adoption of Rule 704 in 1975, the common law posed no barrier to testimony by a physician "that the appellant was not

prescribing drugs in the usual course of a professional practice and for a legitimate medical purpose." Although Rule 704 abrogates the old common law doctrine that proscribed testimony going to an "ultimate issue," it "does not lower the bar[ ] so as to admit all opinions," FED. R. EVID. 704 Advisory Committee's note to 1972 proposed rules.[2] Consistent with Rule 704(a), this court has repeatedly affirmed that "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc)); *see United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 337 (9th Cir. 2017). This prohibition of opinion testimony on an ultimate issue of law recognizes that, "[w]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see* FED. R. EVID. 702(a), 704(a).

Diaz argues that Dr. Chavez impermissibly testified about whether Diaz distributed controlled substances outside the course of professional practice. This trial testimony involved a series of questions that followed a certain pattern: the

---

[2] For example, Rule 704(b) provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." FED. R. EVID. 704(b). In a memorandum disposition filed concurrently, we decide that Dr. Chavez did not impermissibly testify regarding Diaz's mental state or condition.

prosecutor drew Dr. Chavez's attention to prescriptions that Diaz wrote for particular patients and asked whether the "prescriptions for [the drugs were] issued outside the usual course of medical practice" and whether "the drugs [were] given to [the patients] for a legitimate medical purpose." Dr. Chavez invariably answered "yes" to the first question and "no" to the second. According to Diaz, because the prosecutor's questions adopted the language of the elements in § 841(a)(1), Dr. Chavez's responses "substitute[d] his judgment for the jury's."

Both Diaz and the government rely on *United States v. Moran*, 493 F.3d 1002, 1007 (9th Cir. 2007) (per curiam), in which the defendants sold "tax reduction plans" that the government alleged were offshore money laundering schemes. *Id.* An element of one of the crimes was that the "return was false as to something that was necessary to a determination of whether income tax was owed." *Id.* at 1008 (internal quotation marks omitted). At trial, an expert for the government testified that one of the programs was a "sham." *Id.* The district court later defined the term "sham" for the jury, explaining that "[t]o find that a transaction is a 'sham,' you must find beyond a reasonable doubt that the taxpayer was motivated by no business purposes other than obtaining tax benefits in entering the transaction, and that the transaction has no economic substance because no reasonable possibility of a profit exists." Appellant's Opening Brief at 47–48, *United States v. Moran*, 493 F.3d 1002 (9th Cir. 2007) (Nos. 05-30215, 05-30226). We held that the expert's statement was admissible because, "[u]nder the judge's instructions, even if the transactions were a sham, the jury would still have had to draw its own inference from that predicate testimony to answer the ultimate factual question,

of whether income tax was owed." *Moran*, 493 F.3d at 1008 (internal quotation marks omitted).

Diaz reads *Moran* to say that, when an expert witness opinion encompasses the entirety of an element of a crime, it reaches "an ultimate issue of law" and is therefore forbidden. The government understands *Moran* as having established only that an expert witness may not offer an opinion on the defendant's guilt or innocence. We find the reasoning of *Moran* too sparse to illuminate the issue in Diaz's case.

Other circuits have squarely confronted the rule excluding testimony that goes to an ultimate issue of law in circumstances similar to those presented here. *See United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015); *United States v. Chube II*, 538 F.3d 693 (7th Cir. 2008); *United States v. McIver*, 470 F.3d 550 (4th Cir. 2006); *United States v. Katz*, 445 F.3d 1023 (8th Cir. 2006). In *McIver*, the Fourth Circuit held that the district court did not plainly err by allowing the jury to consider expert opinion testimony that the defendant's treatment of his patients was "outside the usual course of medical practice," "inappropriate," or "with no legitimate reason." *McIver*, 470 F.3d at 560, 561–62. The court observed that—unlike terms such as "extortion," "deadly force," "fiduciary," and "unreasonably dangerous"— the terms used by the expert to describe the physician defendant's conduct did not "have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* at 562 (internal quotation marks omitted). The Fourth Circuit reasoned that the phrase "outside the usual course of medical practice" was not so specialized as to render the expert's testimony inadmissible, especially since there are only so many ways of conveying,

in plain language, the impression of a physician abandoning his professional role.  *Id.* at 560, 562.

Likewise, the Sixth Circuit held in *Volkman* that the district court did not abuse its discretion by overruling a similar objection to expert testimony that a physician defendant's prescriptions "were not written for any legitimate medical purpose."  797 F.3d at 388–89.  There, the lay understanding of "legitimate medical purpose" bore directly on the relevant legal inquiry, i.e. whether controlled substances "were distributed or dispensed outside of the course of professional practice and not for a legitimate medical purpose."  *Id.* at 387–90.  Because the term "legitimate medical purpose " does not have a "separate, distinct and specialized meaning" in law than it has in medicine, the Sixth Circuit concluded that the government's experts did not invade the province of the trier of fact by foisting legal conclusions on the jury.  *Id.* at 387, 389–90.

We find these cases persuasive and adopt their reasoning. Although the value of expert testimony lies in the specialized knowledge that an expert brings to bear on an issue in dispute, FED. R. EVID. 702(a), it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard.[3]  We hold that if the terms used by an expert witness do not have a specialized meaning in law and do not

---

[3] As the Fourth Circuit noted, the "vernacular that is available to express whether a doctor acted outside the bounds of his professional practice" is "limited."  *McIver*, 470 F.3d at 562; *see Chube II*, 538 F.3d at 698 (observing that "it is impossible sensibly to discuss the question whether a physician was acting outside the usual course of professional practice and without a legitimate medical purpose without mentioning the usual standard of care").

represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion. *See* FED. R. EVID. 702(a), 704(a).

Here, expert testimony was needed to assist the jury. Dr. Chavez's testimony was helpful because a lay jury would not have the requisite knowledge to evaluate whether the dosage, mix, and course of narcotics prescribed by Diaz were medically appropriate for the conditions being complained of by his patients. Dr. Chavez's opinions were based on a review of the prescriptions for individual patients, and while he employed phrases that also appear in the elements of § 841(a)(1), such as "outside the usual course of medical practice" and "legitimate medical purpose," these phrases were used in their ordinary, everyday sense and do not "have a separate, distinct and specialized" legal significance apart from common parlance, *McIver*, 470 F.3d at 562. Dr. Chavez did not substitute his judgment for the jury's; he provided a professional opinion about whether a course of conduct comported with the standard of care prevalent in the medical community.

In the context of the case, Dr. Chavez's testimony was no doubt persuasive to the jury, but that is because it was uncontradicted and consistent with a great deal of other uncontradicted evidence. Diaz did not proffer a competing expert opinion. Had he presented such testimony, it would have been for the jury to weigh the experts' competing opinions concerning the medically acceptable standard for prescribing controlled substances to the people who sought them from Diaz.

In sum, Dr. Chavez's expert testimony passed muster under Rules 702 and 704, and the district court did not plainly err by admitting it into evidence.

## CONCLUSION

We affirm Diaz's conviction. For the reasons stated in the concurrently filed memorandum disposition, we vacate his sentence and remand to the district court for resentencing.

**Conviction AFFIRMED; Sentence VACATED and REMANDED for resentencing.**