NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 16-10433 |
| | ) | |
| Plaintiff-Appellee, | ) | D.C. No. 1:14-cr-00228-LJO-SKO-7 |
| | ) | |
| v. | ) | MEMORANDUM* |
| | ) | |
| ASHLEY STARLING THOMAS, | ) | |
| AKA Ashly Starling Williams, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, Chief District Judge, Presiding

Argued and Submitted March 14, 2018
San Francisco, California

Before: FERNANDEZ, McKEOWN, and FUENTES,** Circuit Judges.

Ashley Starling Thomas appeals her convictions for money laundering,[1]

---

*This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[1]See 18 U.S.C. § 1956(a)(1)(B)(i).

conspiracy to launder,[2] structuring,[3] and conspiracy to structure.[4]  We reverse and remand.

(1) Thomas asserts that her convictions for money laundering must be reversed because the evidence was not sufficient to support the verdicts.[5]  In particular, she attacks the sufficiency of the evidence to support the element that requires a defendant to know "'that the proceeds were from unlawful activity.'"[6]

We have carefully reviewed the record and disagree with Thomas' claim regarding sufficiency of the evidence that was placed before the jury.  While we recognize that the evidence is, for the most part, circumstantial, that is not fatal. *See United States v. Santos*, 553 U.S. 507, 521, 128 S. Ct. 2020, 2029, 170 L. Ed. 2d 912 (2008) (plurality opinion).  Her unusual travel and bank-account-creation

---

[2]*See id.* § 1956(h).

[3]*See* 31 U.S.C. § 5324(a)(1), (3).

[4]*See* 18 U.S.C. § 371.

[5]*See United States v. Webster*, 623 F.3d 901, 907 (9th Cir. 2010); *United States v. Rubio-Villareal*, 967 F.2d 294, 296 (9th Cir. 1992) (en banc); *see also United States v. Nevils*, 598 F.3d 1158, 1163–65 (9th Cir. 2010) (en banc).

[6]*United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011).  We note that she did not need to know what the precise unlawful activity was.  *See* 18 U.S.C. § 1956(c)(1).  However, the superseding indictment charged that it was marijuana distribution.

behavior,[7] the fact that her travel was paid for by leaders of the marijuana drug conspiracy, and her own varying (and false) stories about the source of the funds,[8] were coupled with the statements of others, who were involved in the drug conspiracy. The latter statements indicated that she well knew that illegal drug distribution was involved. All of that evidence sufficed to support the guilty verdict on the transaction counts[9] as well as the conspiracy count.[10]

However, Thomas also asserts that hearsay statements from individuals involved in the drug conspiracy were improperly admitted and were prejudicial. With that we agree. Unless covered by the co-conspirator exception, the statements were indeed hearsay. *See* Fed. R. Evid. 801(c), (d)(2)(E). For the exception to apply, the statements must be in furtherance of the conspiracy, must be made during the conspiracy, and "there [must be] independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *United States v. Weiner*, 578 F.2d 757, 768 (9th Cir. 1978) (per

---

[7]*See United States v. Recio*, 371 F.3d 1093, 1105–06 (9th Cir. 2004); *United States v. Walitwarangkul*, 808 F.2d 1352, 1354 (9th Cir. 1987).

[8]*Walitwarangkul*, 808 F.2d at 1354; *United States v. Tebha*, 770 F.2d 1454, 1457 (9th Cir. 1985); *Keyes v. United States*, 314 F.2d 119, 122 (9th Cir. 1963).

[9]18 U.S.C. § 1956(a)(1)(B)(i).

[10]*Id.* § 1956(h); *see also Whitfield v. United States*, 543 U.S. 209, 219, 125 S. Ct. 687, 694, 160 L. Ed. 2d 611 (2005).

curiam).  Here, during a conversation between two members of the drug conspiracy one declared to the other that Thomas had delivered a cash payment from a third member of that conspiracy to the declarant.  The declarant went on to state that Thomas was helping the third member with delivery of packages of drugs.  While the first of those statements may well have been outside the exception on the basis that it was not in furtherance of the conspiracy,[11] the second one does not have that defect.  However, admission of both of them suffers from a lack of any independent evidence that Thomas was a member of the drug conspiracy.  For that reason, neither statement was admissible.  *See United States v. Silverman*, 861 F.2d 571, 577–78 (9th Cir. 1988).  The mere fact that Thomas may have been a member of a conspiracy to launder proceeds that turned out to be from the drug conspiracy does not suffice to show that she was a member of the drug conspiracy.  *See United States v. Umagat*, 998 F.2d 770, 773–74 (9th Cir. 1993); *United States v. Brown*, 912 F.2d 1040, 1044 (9th Cir. 1990).  Moreover, the improper admission of that hearsay evidence was not harmless.  The other evidence that she knew that illegally

---

[11]*See United States v. Moran*, 493 F.3d 1002, 1010 (9th Cir. 2007) (per curiam); *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000); *United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993); *United States v. Yarbrough*, 852 F.2d 1522, 1535–36 (9th Cir. 1988).

obtained funds were being laundered was far from overwhelming[12] and the hearsay evidence of her involvement in the drug conspiracy itself may well have tipped the scales against her.[13] Therefore, we reverse her convictions on the money laundering counts and remand. *See Lockhart v. Nelson*, 488 U.S. 33, 34, 41–42, 109 S. Ct. 285, 287, 290–91, 102 L. Ed. 2d 265 (1988).

(2) Thomas also asserts that her convictions for structuring must be reversed on the basis of insufficient evidence to support the verdicts. We agree. To sustain a conviction for structuring transactions in order to avoid the requirement that those must be reported to the United States Secretary of the Treasury by financial institutions,[14] the government must prove, among other things, that the defendant knew about the requirement.[15] The government did not do so in this case. No doubt circumstantial evidence can be relied upon to show knowledge and in a proper case that can be shown by a pattern where the defendant divided what

---

[12]*See United States v. Sauza-Martinez*, 217 F.3d 754, 760–61 (9th Cir. 2000).

[13]*See Parle v. Runnels*, 505 F.3d 922, 932–33 (9th Cir. 2007).

[14]*See* 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311.

[15]*See Ratzlaf v. United States*, 510 U.S. 135, 149 n.19, 114 S. Ct. 655, 663 n.19, 126 L. Ed. 2d 615 (1994). We note that while there was a dissent in *Ratzlaf*, the dissenting justices agreed that knowledge was required. *Id.* at 152, 114 S. Ct. at 665 (Blackmun, J., dissenting).

would logically be large deposits into smaller amounts and scattered them temporally or in other ways. *See United States v. Scholl*, 166 F.3d 964, 979 (9th Cir. 1999); *United States v. Tipton*, 56 F.3d 1009, 1013 (9th Cir. 1995). Here, however, the evidence did not show that Thomas controlled the deposited amounts at all. After others put money into the accounts, she withdrew amounts quite close to the deposited amounts at some later time (within one or two days). Moreover, the evidence showed that others who were participating in similar transfers were not told about the reporting requirements or, for that matter, the source of the funds. Here, the government relies upon a kind of pattern where there is no evidence that Thomas had anything to do with setting that pattern or knew the reason for which it was set. Thus, that evidence does not suffice. Her convictions for the structuring transactions cannot stand. Thus, we reverse her structuring convictions for lack of evidence. *See Burks v. United States*, 437 U.S. 1, 17–18, 98 S. Ct. 2141, 2150–51, 57 L. Ed. 2d 1 (1978).

REVERSED and REMANDED.

***United States v. Thomas***, No. 16-10433

FUENTES, Circuit Judge, concurring in part and dissenting in part.

I concur in the disposition with one exception: I would hold that there is sufficient evidence to support the jury's guilty verdict on the structuring counts.

By statute and regulation, banks are required to file a currency transaction report every time a customer makes a deposit or withdrawal involving more than $10,000. *See* 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311. In turn, it is illegal to cause a bank to fail to file a report, 31 U.S.C. § 5324(a)(1), or to structure a transaction to evade the reporting requirement, *id.* § 5324(a)(3).[1] Viewing the evidence in the light most favorable to the Government, I believe that any rational juror could have found beyond a reasonable doubt that Thomas was aware of the reporting requirement and purposefully sought to avoid it.

In the summer of 2013, Thomas took two brief, cross-country trips to California to make structured withdrawals from her checking accounts. While in the state, Thomas made 34 withdrawals—totaling over $200,000—in amounts less than $10,000. These withdrawals, none of which exceeded $10,000, were made through accounts with no similar history of activity. Taken alone, I believe that Thomas' pattern of structured transactions permits the jury to reasonably infer that

---

[1]"Structuring" is the practice of avoiding deposits and withdrawals in excess of $10,000 so as to not trigger a report. 31 C.F.R. § 1010.100(xx).

she knew about the $10,000 reporting threshold.  *See United States v. MacPherson*, 424 F.3d 183, 195 (2d Cir. 2005) ("[A] pattern of structured transactions . . . may, *by itself*, permit a rational jury to infer that a defendant had knowledge of and the intent to evade currency reporting requirements.") (emphasis added).

Here, however, there was additional evidence that Thomas knew of and intended to evade the reporting requirement.  Specifically, Thomas opened two new checking accounts just before her first trip to California.  Further, in California, Thomas made structured withdrawals at 28 different bank branches throughout the state.  This conduct supports the inference that Thomas scattered her structured transactions between accounts and bank branches to avoid detection. *See United States v. Van Allen*, 524 F.3d 814, 820 (7th Cir. 2008) ("The fact that [defendant] was willing to sacrifice efficiency and convenience . . . by going to separate banks in the same day to make almost identical deposits supports the inference that he knew of and intended to avoid the reporting requirements.").

Additionally, when separately confronted by a bank teller and an IRS Special Agent, Thomas gave false and inconsistent explanations regarding the structuring activity in her accounts.  This dubious behavior further supports the jury's verdict on these counts.  *See United States v. Davenport*, 929 F.2d 1169, 1174 (7th Cir. 1991) (noting that "the fishiness" of an explanation for structured

transactions is "circumstantial evidence that the structuring was done with the evasive purpose that the statute requires for liability").  What's more, the unlawful source of the funds—a fact which the majority does not dispute—provides another basis from which the jury could infer that Thomas knew of the reporting requirement.  *See MacPherson*, 424 F.3d at 193 ("[T]he criminal origin of structured funds, to the extent it provides a motive for concealment from government authorities, may constitute an additional circumstance from which a jury can infer a defendant's knowledge of" the reporting requirement).

In considering the sufficiency of the evidence, "a reviewing court may not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt, only whether *any* rational trier of fact could have made that finding."  *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (emphasis in original) (citations and quotation marks omitted).  "[T]his deferential standard of review protects the trier of fact's responsibility to resolve conflicting testimony, weigh the evidence, and draw reasonable inferences from the evidence presented."  *United States v. Stanton*, 501 F.3d 1093, 1099 (9th Cir. 2007).

There is rarely direct evidence of knowledge in structuring cases.  *United States v. Tipton*, 56 F.3d 1009, 1012 (9th Cir. 1995).  Nevertheless, it is well-established that "[a] jury may find the requisite knowledge that the structuring was

unlawful by drawing reasonable inferences from the evidence of defendant's conduct." *United States v. Scholl*, 166 F.3d 964, 979 (9th Cir. 1999). While I understand the majority's concerns, in light of the "great deference" that we must give to a jury verdict, I cannot say that no rational juror could have found the essential elements of structuring beyond a reasonable doubt. *United States v. Pelisamen*, 641 F.3d 399, 409 n.6 (9th Cir. 2011). Because "[s]ufficient evidence supports the jury's considered verdict, [] the verdict warrants deference rather than second-guessing." *United States v. Bonds*, 784 F.3d 582, 603 (9th Cir. 2015) (en banc) (Rawlinson, J., dissenting).

For the above reasons, while I otherwise concur, I respectfully dissent from the majority's holding on the structuring counts.